NELLIE G. GROVER

v.

JOHN P. GROVER.

[Filed January 15th, 1902.]

1. A divorce for desertion will not be granted on the unsupported testimony of the petitioner as to the causes of the separation, especially where the separation occurred in another state.

2. The facts shown—*Held*, not to establish desertion within the statute, and, further, that the facts proven do not show such permanent residence in this state as to give the court jurisdiction of the suit.

STEVENSON, V. C.

This is an *ex parte* case, in which the master reports in favor of a decree divorcing the petitioner from the defendant on the ground of desertion. As the proofs stand, I do not think that the cause of divorce in New Jersey described as willful, continued and obstinate desertion has been established. If the matrimonial offence could be deemed proved, I do not think that the petitioner has shown that this court has any jurisdiction of the subject-matter of her suit, viz., her *status* as a married woman.

The petitioner and the defendant were married in Winchester, New Hampshire, October 28th, 1880, where her family appear to have resided. After the marriage the couple went to live in Worcester, Massachusetts, where they resided continuously for about fifteen years, until November 14th or 15th, 1895, when the defendant left the petitioner and went to Burlington, Vermont, where, apparently, he has since remained. The defendant was served with notice of the pendency of this suit at Burlington.

*First.* The circumstances under which the petitioner and the defendant separated in November, 1895, depend wholly upon the testimony of the petitioner. Except so far as the improvi-

dence and drunkenness of the defendant are proved, otherwise the petitioner's story stands without corroboration.

"A divorce will not be granted in this state upon the unsupported testimony of the petitioner as to the causes of separation." *McShane* v. *McShane, 18 Stew. Eq. 341; Costill* v. *Costill, 2 Dick. Ch. Rep. 346.*

Where the desertion complained of has commenced long after the original separation, the petitioner, while any room for doubt remains, should bring all the testimony reasonably obtainable tending to prove the true origin of the separation, the causes and motives which lay back of it. Especially ought this measure of proof to be required in a case like this, where the separation began in a distant state, and the petitioner has, in effect, brought her grievance with her into the State of New Jersey.

But accepting the petitioner's testimony as true, it fails, in my judgment, to make out a case of desertion under our law. The facts are these: The defendant was employed in a shoe store, in Worcester, until his intemperate habits caused him to lose his situation and take another at less wages. The petitioner rented rooms and took in boarders, in order to maintain the household. The petitioner's life appears to have been a hard one on account of the drunkenness and the improvidence of the defendant. She testifies that she told her husband that "if he didn't stop drinking, she could not stand it any longer." She admits that she might have told him that if he did not stop drinking, she "would not live with him." By the defendant's change of situation his wages had been reduced from $25 a week to $10 a week. The petitioner testifies that the defendant

"said that he had got to go somewhere else to earn more money, so he broke from his situation and got one in Burlington, Vermont. They promised him more if he came up there and did well and would not drink."

The petitioner further testifies that she thought the move to Burlington was the best thing her husband could do; that "he was in debt all over," and what he earned would not enable them to live as they ought to live. The defendant, as usual, got drunk the night before he left his home in Worcester, and

when he left made no arrangement with the petitioner of any kind about her joining him or his coming back to her. The petitioner was left to take care of herself. After the defendant went to Burlington he wrote a letter to the petitioner, in which he asked her to send him furniture for one room if she "was going to break up." This letter, which the petitioner says she destroyed, must have been written some time within a period of six weeks following November 14th or 15th. The petitioner says, "He did not ask me what I was going to do, but said if I was going to store the goods he would like to have furniture for one room." The petitioner sent the required furniture to the defendant and wrote him a letter, in which she merely told him that she had so sent the furniture. The petitioner and defendant apparently have never seen each other since November, 1895, and no communication of any kind has passed between them since the correspondence above noted. The petitioner says that she did not know whether he (the defendant) reformed or not. She apparently has not cared to inquire in regard to this subject. There is no suggestion in the case of any disagreement or incompatibility between this man and wife, excepting what arose from the husband's excessive use of strong drink. The petitioner says, "I think if he had reformed from his drinking habits, I would have gone to him gladly." The petitioner, after sending the furniture to her husband, as above stated, remained only a short time in Worcester, and then, in January, 1896, went to Chicago, thinking that she might live there with an aunt. She did not inform the defendant of her movements, and has never since taken the pains to inform him of her whereabouts. There is no proof in the case that the defendant knew that his wife had come to New Jersey until he was notified of this suit. When asked by the master why she did not write to the defendant while she was living in New Jersey during the last two years, the petitioner answered, "I thought if he didn't care to have me live with him, why I didn't care to; and, besides, he was drunk too much." The petitioner again testified that she did not know whether her husband had reformed or not, and did not know anything at all about him. She knew that her husband had left her merely to get employment in a new place, where

he would be beyond the influence of his old companions and with a special inducement before him to make an effort at reformation. And yet, within a few weeks, she left, so far as her husband was concerned, for parts unknown, and for five years has been so far separated from him in distant states that, during a part, at least, of the time, she supposes he did not know where she was.

I do not mean to intimate that because the petitioner preferred to have her drunken and improvident husband remain away from her that his separation might not constitute a willful, continued and obstinate desertion under our statute. The acquiescent state of mind of the injured wife who has been deserted, in my judgment, does not deprive her of the right to a divorce when such state of mind has not been communicated to the husband, or in any way tended to produce or continue the separation, and is the natural result of his cruelty, drunkenness or other persistent violation of his duty toward her. No wife, in order to be entitled to a divorce, ought to be required to swear that she desired to have a husband, who has ended a career of brutality toward her by deserting her, come back and resume that career. But in this case the petitioner appears to have acquiesced in the separation from her husband without regard to whether he had reformed and was willing to do his duty to her or not. She failed to notify him that if he would reform she would stand by him. I think that her conduct amounted to a distinct notice to her husband that she had no interest in him, did not care whether he reformed or not, or had adjudicated that he would or could not reform, and that therefore she did not wish to live with him again.

No intent to desert can be imputed to the defendant at the commencement of the separation. Natural and proper motives actuated the defendant in leaving his wife in Worcester while he sought more profitable employment in Burlington. The petitioner does not pretend that she supposed that the departure of her husband was due to any desire on his part to abandon her. She testifies, in substance, that his move to Burlington was a prudent act, with reference to his pecuniary obligations and the insufficiency of his earning in Worcester to support them both.

Before the protracted absence, silence and failure to furnish support, on the part of the husband, could be held to constitute a desertion of his wife, it seems to me that the wife had plainly indicated to him that she was willing to be deserted; that she had elected to live her life, where she might see fit, apart from him.

*Second.* But if the defendant has been guilty of the matrimonial offence of desertion under our law, the jurisdictional fact of the residence of the petitioner in this state is not proved by sufficient evidence.

This defect has no relation to the failure of the petitioner to bring the person of the defendant within the jurisdiction of this court by the service of process within this state. If the defendant had been so served with process, and had, in good faith, defended this suit, the result would have been the same. We do not undertake to settle the *status* of married persons residing in other states who see fit to endeavor to impose that task upon us. We must have jurisdiction of that *status,* and their consent cannot confer such jurisdiction.

The parties in this case never had any matrimonial domicile in New Jersey. The defendant has never, at any time, resided here. The sole basis for the jurisdiction of the court must be found in a *bona fide* residence of the petitioner—a residence maintained permanently, *animo manendi,* for two years prior to the commencement of the suit—not a residence established for the purpose of obtaining a divorce, and presumably limited and qualified, in respect of its contemplated duration, by such purpose.

The whole law on this subject is discussed at length in the opinion of the chancellor in the case of *Sweeney* v. *Sweeney, 17 Dick. Ch. Rep. 357,* and in which all the New Jersey cases are cited.

The power of the State of New Jersey, through its legislature (if the constitution did not forbid) and through its courts, to control the matrimonal *status* of its citizens—of all persons domiciled in its territory—is not to be questioned, and no regard need be had to the effect which other states may, under the provisions of the constitution and laws of the United States, or

of their own constitutions and laws, give to such legislative or judicial action. The question simply is as to what sort of a residence or domicile of a person in this state our statute has declared necessary in order to enable this court to take cognizance of his or her matrimonial *status*. The cases referred to above answer this question adversely to the petitioner in this case.

The petitioner, for a year prior to her coming to New Jersey, resided in the city of New York, where she appears to have been engaged in her business of "renting rooms and taking boarders." However this may be, she came to the city of Newark, in this state, in March, 1899, and, with the aid of a friend who accompanied her from New York, found rooms suitable for the prosecution of the same business and moved her belongings to them. About four months after the expiration of two years she commenced this suit for divorce. The only evidence which she offers to explain the motives which induced her to live in New Jersey, or the nature and contemplated duration of her stay, is in her own brief statement that she "thought it would be cheaper to live in Newark." Accepting this statement as a complete disclosure of her mind, it would seem to be fair to infer that she contemplated living elsewhere if her expectation of finding cheap living in Newark should prove to be unwarranted. At least, it indicates that the residence was experimental in its origin. For all that appears the petitioner had not a single relative, friend or even acquaintance in Newark or anywhere else in New Jersey when she first came into the state, and since her coming it does not appear that she has formed any permanent ties here. Her business of "renting rooms and taking boarders" is one which she had already pursued in two other states within a few years, and could, at any time, be again transferred. It is not shown that this business was successful, and the only boarder of whom we are informed, was the witness who came with the petitioner from New York, and who afterwards returned to New York.

This seems to be a clear case where the "violent presumption," mentioned by Judge Voorhees, speaking for the court of errors, in the case of *Tracy* v. *Tracy, 17 Dick. Ch. Rep. 807,* as further

Grover *v*. Grover.

expounded by the chancellor in *Sweeney* v. *Sweeney, supra,* directly applies.

The fair inference from the whole testimony is that the petitioner became a resident of New Jersey in order to be able to get a divorce in case her husband maintained his separation from her continuously for two years. Her case fails because she does not prove that she became a permanent, indefinite resident, *animo manendi.* The motive and purpose which lie back of the establishment of the residence in New Jersey indicate the transient character of the residence, in the absence of countervailing evidence.

The cases of the kind to which this belongs seem to be becoming more and more frequent. It is our policy not to permit our divorce laws to be used to dissolve the marriage bonds of citizens of other states, who, unable to obtain the desired freedom at home, find it convenient to live in New Jersey for two years, and are willing to swear that they came here with intent to remain permanently, and not merely with intent to obtain a divorce and then go elsewhere.

Where the deserted spouse comes into this state from a state in which desertion is not a cause of absolute divorce, if his residence here must be interpreted and characterized, in respect of its nature and contemplated duration, solely by his own testimony in regard to his motives, purposes and intentions, his prompt application for a divorce at the expiration of the statutory period of two years should, in my opinion, in every case, be denied, on the ground that he has failed to establish the jurisdictional fact of residence within the meaning of our statute. But this proposition is not necessary to the decision of the case in hand, because the petitioner's own testimony fails to show that she established a permanent residence in New Jersey, *animo manendi*—that she was domiciled in this state for two years before the commencement of her suit.